IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

MARY P.,[1]

      Plaintiff,

v.                                                                                                   Civ. No. 22-449 SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER

Plaintiff argues that the Commissioner committed error when partially denying her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Specifically, the ALJ found Plaintiff disabled as of January 18, 2019, but Plaintiff appeals the determination that she was not disabled prior to that date. Plaintiff contends that she was diagnosed with a personality disorder in November 2019 and argues that personality disorders generally are stable conditions present from adolescence or early adulthood. Therefore, Plaintiff argues, the ALJ was required to discuss whether the diagnosis could have resulted in functional limitations prior to January 2019. The Court disagrees and holds that, in the absence of any medical evidence in the record establishing a personality disorder prior to January 18, 2019, the ALJ was not required to speculate as to the duration of the personality disorder. As a result, the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

Court DENIES Plaintiff's Motion To Reverse And Remand For A Rehearing With Supporting Memorandum, Doc. 21, and affirms the decision below.[2]

## APPLICABLE LAW

A. <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

---

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 4, 7, 8. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

 (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.

 (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.

 (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

 The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.     Standard of Review

The court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court neither reweighs the evidence nor substitutes its judgment for that of the agency. *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that

correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

Echoing the prior administrative finding, the ALJ found that Plaintiff was disabled as of January 18, 2019 (the date of her application). AR 38. Because Plaintiff's date last insured was December 31, 2017, AR 28, this finding had the effect of granting Plaintiff's Title XVI application and denying her Title II application. Plaintiff therefore appeals the denial of her Title II application for benefits, arguing that the ALJ erred in failing to consider and discuss evidence relating to her condition prior to January 18, 2019. Doc. 21 at 3.

**I.     Severe impairment**

Plaintiff argues that the ALJ failed in her duty to consider all medically determinable impairments ("MDI"), severe and nonsevere, throughout the disability process. Doc. 21 at 6-7; Doc. 28 at 2. Specifically, Plaintiff contends that, by failing to mention Plaintiff's diagnosis of personality disorder, the ALJ violated a duty to discuss evidence pertaining to this diagnosis. Doc. 21 at 7.

In a social security case, an ALJ "must evaluate the effect of a claimant's mental impairments on her ability to work." *Wells v. Colvin*, 727 F.3d 1061, 1064 (10th Cir. 2013). At step two of the Commissioner's five-step analysis, this requires the ALJ "to determine whether the mental impairment is 'severe' or 'not severe.'" *Id.* To be "severe," an impairment or combination of impairments must "significantly limit[] [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). While step two requires only "a 'de minimis' showing of impairment, . . . . the claimant must show more than the mere

5

presence of a condition or ailment." *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir. 1997). A medically determinable impairment "must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. Therefore, a physical or mental impairment must be established by objective medical evidence from an acceptable medical source." 20 C.F.R. §§ 404.1521, 416.921. "We will not use your statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment." *Id.*

"[T]he regulations also instruct that even if the ALJ determines that a claimant's medically determinable mental impairments are 'not severe,' [s]he must further consider and discuss them as part of h[er] residual functional capacity (RFC) analysis at step four." *Wells*, 727 F.3d at 1064; *see* 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); *Allman v. Colvin*, 813 F.3d 1326, 1330 (10th Cir. 2016) ("an ALJ must consider the limiting effects of non-severe impairments in determining the claimant's RFC").

Plaintiff argues that the ALJ did not satisfy a duty to consider the personality disorder and discuss all material evidence related to that impairment. As the Commissioner argues, however, any error is harmless as it pertains to the period after January 18, 2019. Doc. 27 at 15 ("Plaintiff could not have achieved a more favorable result than she did."). The ALJ found Plaintiff fully disabled as of that date, and therefore no error in failing to consider or discuss a severe impairment with respect to this period can possibly inure to Plaintiff's benefit. Therefore, to prevail on appeal, Plaintiff must point to evidence pertaining to an MDI of personality disorder *prior to January 18, 2019* which the ALJ failed to consider. Plaintiff does not do so.

First, Plaintiff points to record evidence that (1) postdates the disability onset date and (2) contains no indication of retroactivity on its face. Doc. 21 at 8 (discussing social security Field

Office staff observations of Plaintiff from her application date of January 18, 2019 (citing AR 190); Plaintiff's statements in her function report from March 29, 2019 (citing AR 459); her statements at a psychotherapy intake on January 29, 2019 (citing AR 1016); a therapy session on June 13, 2019 (citing AR 1037); counselor notes from September 10, 2020 (citing AR 1286)); *see also* Doc. 21 at 10-11 (discussing Plaintiff's November 17, 2020 and August 6, 2021 hearing testimony (citing AR 98,[4] 101-02)).

Plaintiff also relies on Dr. Hughson's examining consultant opinion. Doc. 21 at 9-10. The examination in question took place on October 11, 2019. AR 1060. The consultant's report does not contain retroactive language in it, and there exists no other reason (such as a prior treatment relationship) to infer that a one-time consulting examination resulted in retroactive findings.

Plaintiff next cites the state-agency psychological consultant's opinion on reconsideration. Doc. 21 at 10. Dr. Gary Lindsay listed Plaintiff's severe impairments as including "Personality and Impulse-Control Disorders" and opined that she is disabled as of January 18, 2019. AR 189, 200. Dr. Lindsay's opinion did not indicate whether she had a personality disorder prior to that date. This opinion clearly supports, rather than contradicts, the ALJ's finding that Plaintiff is disabled as of January 18, 2019.

The Court finds, in sum, that Plaintiff has not pointed to any objective medical evidence establishing an MDI of personality disorder prior to the ALJ's disability onset date. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987) (burden of establishing disability is on the claimant). Nonetheless, Plaintiff argues that all this evidence really does apply prior to 2019 because personality disorders are stable conditions that tend to be present from childhood or early

---

[4] This page of the hearing transcript reflects that Plaintiff testified she had depression and anxiety in 2016, but the ALJ did find that Plaintiff had severe impairments of anxiety and depression since her alleged onset date of September 15, 2016. AR 25, 28.

adulthood. Doc. 21 at 7-8 (citing the Diagnostic and Statistical Manual of Mental Disorders, which states that the onset of personality disorders can be traced to adolescence or early adulthood); *see also* Doc. 28 at 3-4 ("Post-DLI evidence of [Plaintiff]'s personality disorder in the case at hand supplies an inference of linkage to her pre-DLI condition, particularly since a personality disorder does not occur spontaneously and individuals with this diagnosis generally do not seek treatment."). Similarly, Plaintiff contends that Dr. Williams testified at the hearing before the ALJ that "a diagnosis of a personality disorder may be applied retrospectively." Doc. 21 at 11.

   The Court rejects this theory. The general principle that a personality disorder typically dates from adolescence is not objective medical evidence related to *this* Plaintiff's functioning which the ALJ was required to consider or discuss. In particular, Dr. Williams did not testify that there was any evidence in *this* case that *this* diagnosis may be applied retrospectively. The clear import of his testimony was that no medical evidence exists to establish that Plaintiff had an MDI of personality disorder retroactively before the date of Dr. Hughson's opinion. AR 65 ("Likely personality disorders *if* we have sufficient information that suggests the personality disorder -- just something that's been ongoing for some time." (emphasis added)); AR 66 ("There are different degrees to which a person can have a personality disorder and can impact B listing criteria. So lots of potential factors in this evaluation that could be a progress respectively I just don't -- I don't have enough direct connections to say with a degree of confidence that these things all necessarily tie back.").

   At base, Plaintiff's argument rests on speculation: because Plaintiff was diagnosed with a personality disorder in October 2019, Plaintiff could likely have been diagnosed with a personality disorder prior to that date as well. But the ALJ was not required to consider

speculation. The Court cannot overturn the ALJ for failing to discuss a personality disorder MDI prior to the disability date of January 18, 2019, when there is no objective medical evidence to support such a finding. For the same reasons, the Court does not find the ALJ had a duty to discuss this evidence at step four.

**II.     Dr. Hughson and LPCC Dewhurst**

Plaintiff argues that the ALJ should have considered the opinions of Dr. Hughson and LPCC Dewhurst as they pertained to the period prior to January 18, 2019. Doc. 21 at 16-22. Plaintiff fails to show, however, that these providers gave any opinions related to Plaintiff's functioning prior to January 18, 2019. And, as above, any errors the ALJ made with respect to evaluating Plaintiff's functioning after January 18, 2019, are harmless.

**A.     Dr. Hughson**

Dr. Hughson examined Plaintiff on October 11, 2019. AR 1060. Dr. Hughson took reports from Plaintiff concerning her history and childhood, AR 1061, but Plaintiff points to no language in the report that is an opinion from Dr. Hughson related to Plaintiff's functioning prior to October 11, 2019. *Cf.* Doc. 21 at 18-19 (describing this opinion). Plaintiff argues that "Dr. Hughson diagnosed [Plaintiff] with a personality disorder, which as described above, is an enduring pattern which may have predated [Plaintiff]'s DLI." Doc. 21 at 20; *see also* Doc. 28 at 6 ("a diagnosis of personality disorder . . . by definition, 'can be traced back at least to adolescence or early adulthood'"). For the same reasons stated above, the Court rejects this argument because it rests on speculation, not medical evidence. A condition that *could have* existed prior to this examination is not the same as medical evidence or opinion evidence that the condition *did* exist prior to this examination which the ALJ was required to discuss.

9

B. <u>LPCC Dewhurst</u>

Plaintiff argues LPCC Dewhurst's opinion is retroactive because she completed a form with these instructions: "Please consider patient's medical history and the chronicity of findings as from <u>at least prior to 12/31/2017 to current examination</u>." AR 1290 (emphasis in original). The Court does not agree that these boilerplate instructions on a form render an opinion retroactive in and of themselves. *Lopez v. Berryhill*, No. 16-552 SCY, 2017 WL 4356384, at \*7 (D.N.M. Sept. 30, 2017) ("This instruction . . . does not make clear whether a doctor is to consider a patient's medical history in making an assessment about a claimant's current condition, or whether the doctor is to make an assessment about a claimant's condition during the entire timeframe."). Plaintiff argues *Lopez* should be distinguished on its facts, Doc. 28 at 7, but the Court finds its own opinion in *Lopez* persuasive for this point, and reiterates it: these ambiguous boilerplate instructions do not, without more, render an opinion retrospective to the date cited in the instructions.

The form is dated November 2020 and aside from the boilerplate, makes no reference to a period prior to January 18, 2019. The Court finds a retroactivity argument especially unpersuasive because LPCC Dewhurst did not begin seeing Plaintiff until June 25, 2019. Doc. 21 at 19 (citing AR 1040-41). In the absence of LPCC Dewhurst clearly stating that her opinion of Plaintiff's functioning predates LPCC Dewhurst's treatment relationship with Plaintiff, the Court does not fault the ALJ for failing to discuss this speculative possibility.

As explained above, the Court does not consider any arguments of error related to the ALJ's evaluation of LPCC Dewhurst's opinion after the period starting January 18, 2019. The ALJ found Plaintiff to be disabled as of January 18, 2019 and so the failure of the ALJ to consider evidence that would have only strengthened this conclusion is harmless. This is the case with Plaintiff's quarrel over the ALJ's reliance on Plaintiff's daily activities to discount LPCC

10

Dewhurst's November 2020 opinion, *cf.* Doc. 21 at 20-21, and her emphasis of factors that support the reliability of this opinion (such as the treatment relationship), Doc. 28 at 7. Any errors in the ALJ's analysis would be harmless, as the ALJ found Plaintiff to be disabled from the date of LPCC Dewhurst's diagnoses forward.

### III. Appeals Council

Plaintiff argues that the Court should remand because the Appeals Council should have, but did not, consider new evidence submitted to it—specifically a letter from LPCC Dewhurst dated November 30, 2021. Doc. 21 at 23.

#### A.  The Standard Of Review Is De Novo

Under its regulations, the Appeals Council will only review a case if, among other things, it receives additional evidence "that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision." 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5). Additionally, the Appeals Council will only consider additional evidence if the claimant demonstrates good cause for not having submitted the evidence to the ALJ. *Id.* §§ 404.970(a)(5), 416.1470(a)(5).[5] Whether evidence qualifies for consideration by the Appeals Council under this standard is a question of law subject to de novo review. *Krauser v. Astrue*, 638 F.3d 1324, 1328 (10th Cir. 2011). The "general rule of *de novo* review permits [the Court] to resolve the matter and remand if the Appeals Council erroneously rejected the evidence." *Id.* (citing *Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)). If the evidence does qualify and the Appeals Council erroneously rejected it, the case is remanded to an ALJ for a rehearing with the new

---

[5] Neither the Appeals Council nor the Commissioner before this Court contend that Plaintiff failed to demonstrate "good cause" for not submitting the evidence earlier. Therefore, the Court does not consider any such argument.

11

evidence. *Id.* "If the evidence does not qualify, the Appeals Council does not consider it and it plays no role in judicial review." *Id.* The Court will refer to this as the "de novo" standard of review.

The standard of review in district court changes significantly, however, if the Appeals Council *did* consider the new evidence, but nonetheless determined that substantial evidence supported the ALJ's decision. In such a case, without consideration of the subsection (a)(5) requirements for qualification, the Court would then perform its *own* substantial-evidence review of the entire record, taking into account the new evidence never presented to the ALJ that the Appeals Council considered but did not necessarily discuss. *Padilla v. Colvin*, 525 F. App'x 710, 712 n.1 (10th Cir. 2013); *Krauser*, 638 F.3d at 1328; *Vallejo v. Berryhill*, 849 F.3d 951, 956 (10th Cir. 2017). The Court will refer to this as the "substantial-evidence review" standard.

When never-before-considered evidence is presented to the Appeals Council, the substantial-evidence review standard applies *only* if the Appeals Council "considered" the additional evidence as qualifying for review under subsection (a)(5)'s three criteria. The threshold determination is therefore whether the Appeals Council "accepted" the new evidence or "rejected" it. The Court agrees with Plaintiff that, in this case, the Appeals Council rejected the new evidence because it found that the evidence is non-qualifying under subsection (a)(5)'s new/material/temporally relevant standard. AR 2 ("You submitted medical source statement dated November 30, 2021 from Laura DewHurst [sic], LPCC (3 pages). We find this evidence does not show a reasonable probability that it would change the outcome of the decision. We did not exhibit this evidence.").

Nonetheless, the Commissioner implies that the Court should apply the substantial-evidence standard of review. Doc. 27 at 23 ("[I]f the Court concludes that the ALJ's decision

remains supported by substantial evidence despite the untimely evidence submitted by Plaintiff, the Court affirms the ALJ's decision. And that is the conclusion the Court should come to here."). For all the reasons given above, the Court disagrees. The Court will proceed to review de novo whether the evidence is new, material, and temporally relevant.

B. Discussion

Plaintiff argues that LPCC Dewhurst's November 30, 2021, letter qualified for Appeals Council consideration because it was new, temporally relevant, and material. Doc. 21 at 23. In addressing Plaintiff's argument, the Court will consider only whether the letter is new, temporally relevant, and material as it pertains to Plaintiff's functioning before January 18, 2019. This is because, as the Court has previously stated, the ALJ found Plaintiff to be disabled from January 18, 2019 forward. Thus, the ALJ's failure to consider additional evidence that provides *further* support for a conclusion favorable to Plaintiff—that she was disabled as of January 18, 2019—could cause Plaintiff no harm. Regarding the period before January 18, 2019, the Court need not linger on the question of whether LPCC's November 30, 2021 letter was new, as the letter fails to qualify under the other factors. The Court thus turns to the second factor, temporal relevance.

*Temporal relevance.* On its face, the LPCC Dewhurst's letter does not discuss the period before January 18, 2019. Plaintiff emphasizes that the letter states Plaintiff's current conditions are rooted in childhood trauma and that her symptoms have worsened over time. Doc. 21 at 29; AR 16. But an explanation as to the root cause of Plaintiff's current condition is different than a statement as to the likely onset date of Plaintiff's disability. LPCC Dewhurst's statement about the root cause of Plaintiff's disability does not establish that Plaintiff's disability existed before the date of LPCC Dewhurst's November 30, 2021 letter. Indeed, the statement that Plaintiff's symptoms have "worsened" actually implies that, although Plaintiff's symptoms might be

13

disabling as of the date of LPCC Dewhurst's letter, those symptoms were less severe in the past. Exactly when these worsening symptoms became disabling is simply not something LPCC Dewhust's letter addresses.

Plaintiff next attempts to establish a disability onset date before Plaintiff's date last insured of December 31, 2017, by again focusing on the boilerplate instructions on the form LPCC Dewhurst completed (instructing LPCC Dewhurst to "consider patient's medical history and the chronicity of findings as from <u>at least prior to 12/31/2017 to current examination.</u>" AR 1290 (emphasis in original)). Specifically, Plaintiff argues that "LPCC Dewhurst's clarifying letter supports the reasons for her prior findings as from at least prior to December 31, 2017." Doc. 21 at 27. But the Court has already rejected the notion that the boilerplate instructions on the form LPCC Dewhurst completed mean that all of LPCC Dewhurst's opinions, regardless of context and regardless of the fact LPCC Dewhurst did not begin treating Plaintiff until June 2019, *automatically* should be deemed to apply at least as of December 31, 2017. The absurd result of such a rule would be that a medical provider could not distinguish between a patient's condition during different time frames, as any condition that existed during any time frame would automatically be deemed to also exist as of the date set forth in the boilerplate instructions.

Plaintiff next argues this Court has held that "evidence connected to chronic conditions that were the subject of the record in front of the ALJ" should be considered by the Appeals Council. Doc. 21 at 29. This is only partially true. The Court has held that the Appeals Council should consider evidence about chronic conditions when (1) the opinion about such conditions is explicitly retrospective or at least ambiguous as to the time period; or (2) the provider had some basis to opine retrospectively, such as a treatment relationship that spanned the relevant time

14

period. *See, e.g.*, *Granger v. Kijakazi*, No. 20cv246 SCY, 2021 WL 3269094, at *5-6 & n.5 (D.N.M. July 30, 2021). Neither of these elements are present in this case.

Finally, Plaintiff contends that, because the Appeals Council did not explicitly reject LPCC Dewhurst's letter based on its inapplicability to the relevant time period, neither may this Court. Doc. 28 at 11 ("Neither the Commissioner nor this Court may raise post hoc justifications for the decision below." (internal quotation marks omitted)). But the principle that an appellate court's review is limited to reviewing only what was considered below does not apply when the appellate court's standard of review is de novo. *See Lindsey Marie C. v. Kijakazi*, No. 22cv1097, 2023 WL 2809921, at *4 (D. Kan. Apr. 6, 2023) (discussing this question in depth based on the nature of de novo review). Indeed, when new evidence is submitted and the Appeals Council denies review, the Appeals Council is not required to state its reasoning at all. *Vallejo v. Berryhill*, 849 F.3d 951, 955 (10th Cir. 2017). Accepting Plaintiff's argument that an appellate court may only consider the Appeals Council's stated reasoning would render judicial review meaningless in almost all cases, as the Appeals Council seldom provides reasoning when it denies review.

*Materiality.* In addition, the Court rejects Plaintiff's argument that, had the ALJ seen LPCC Dewhurst's November 30, 2021 letter, the letter would have had a material effect on the outcome of the ALJ's decision for the period before January 18, 2019. The focus of Plaintiff's argument is misdirected. Plaintiff focuses much of her materiality argument on the period *after* January 18, 2019. For example, Plaintiff argues LPCC Dewhurst's November 30, 2021 letter may have changed the ALJ's determination that LPCC Dewhurst's November 2020 opinion was unpersuasive due to inconsistency. Doc. 21 at 27. But as explained above, LPCC Dewhurst did not opine in November 2020 that Plaintiff was disabled before her determined January 18, 2019

disability onset date, much less before her December 31, 2017 date last insured. Indeed, as Plaintiff acknowledges, LPCC Dewhurst did not even begin treating Plaintiff until June 25, 2019. Doc. 21 at 19. And, nowhere in LPCC Dewhurst's November 11, 2020 assessment does she indicate that Plaintiff's limitations existed before the time of her November 11, 2020 assessment, much less before the time she started treating Plaintiff.

Further, even if LPCC Dewhurst's November 30, 2021 letter might have caused the ALJ to find LPCC Dewhurst's November 2020 assessments more persuasive, such a finding would not have benefitted Plaintiff. The ALJ found Plaintiff totally disabled as of January 18, 2019. Thus, even if seeing LFCC Dewhurst's November 30, 2021 letter would have caused the ALJ to accept LFCC Dewhurst's assessment that Plaintiff had extreme limitation in November 2020, the result for Plaintiff would be the same: as of November 2020 the ALJ determined she was totally disabled. Thus, the inability of the ALJ to consider additional evidence rendering LFCC Dewhurst's November 2020 opinion more persuasive caused Plaintiff no harm.

Similarly, Plaintiff argues that LPCC Dewhurst's November 30, 2021 letter is material because it is consistent with the opinions of Dr. Lindsay and Dr. Hughson. Doc. 21 at 28. But the ALJ found these doctors' opinions persuasive, AR 33-35, and so more evidence agreeing with them would not be material and would not lead to a better result for Plaintiff.

In sum, Plaintiff does not show that LPCC Dewhurst's November 30, 2021 letter was temporally relevant or material as to the period prior to January 18, 2019. The Court therefore affirms.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion To Reverse And Remand For A Rehearing With Supporting Memorandum, Doc. 21, is **DENIED**.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**